UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————x
In re:

SEAN M. MURRAY

Debtor Pro Se
—————————————————————x

Case No. 17-44157

Chapter: 7

**DEBTORS UNSWORN DECLARATION UNDER PENALTY OF PERJURY IN OPPOSITION TO FAY SERVICING, LLC'S MOTION TO COMPEL ABANDONMENT**

Debtor SEAN M. MURRAY, appearing ProSe, files this opposition to the application at dkt 127 for an Order Abandoning certain property of the estate pursuant to 11 U.S.C. Sections 105(a) and 554 and Federal Rules of Bankruptcy Procedure 6007(b) by Fay Servicing, LLC as servicer for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust ("Fay" or "Movant") by and through its attorneys, LOGS Legal Group LLP f/k/a Shapiro, DiCaro & Barak, LLC, and in support thereof, states as follows:

**ALLEGED SECURED CREDITOR HAS NO STANDING UNDER RULE 6007 OR § 554**

1. Rule 6007(b) of the Bankruptcy Rules states a party in interest may file and serve a motion requiring the trustee or debtor-in-possession to abandon property of the estate.

2. Fay Servicing, LLC as servicer for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust, is not a party in interest and has not offered any documentation by an affiant with personal knowledge of facts relevant to any servicing transfer or mortgage transaction supporting Fay's standing to move to compel abandonment or substantiating Attorney Griswold's filings and attestations.

3. Debtor contends that mortgage servicing transfer has not been properly effectuated, Fay is not listed in Debtor's petition or named as a party to Debtor's adversary proceeding complaint and any documentation of transfer produced by Movant would be insufficient if not fraudulent and criminal, as detailed below.

**DEFERRED CONSIDERATION OF LOSS MITIGATION APPLICATION**

4. On May 21, 2021 the Debtor Pro Se, SEAN M. MURRAY, filed the first loss mitigation request with respect to the party (unilaterally substituted without of a FRBP rule 7025 motion for substitution) filing on behalf of Specialized Loan Servicing, LLC ("SLS"), Fay Servicing LLC, into the adversary proceeding (17-44157-ess) and appeal (21-mc-00178-LDH) of the December 15, 2020 decision (dkt 50 &51) on SLS's November 11, 2019 Motion for Summary Judgement (dkt 28).

5. The Debtor had previously filed into the related adversary proceeding (18-01141), a Motion for Leave to Appeal or Amend the Adversary Complaint at dkt 53 on December 29, 2020.

6. The motion at dkt 53 of the adversary proceeding (18-01141), requested leave of court to appeal the interlocutory order at dkt 50 & 51 and amend the adversary complaint to incorporate the "New Allegations" court determined were only raised in opposition to the motion for summary judgement.

7. Debtor has appealed this determination demonstrating the incorporation of the January 22, 2018 Objection to Motion for Relief From Stay at dkt 31 of 17-44157-ess and Debtor's claims of Nationstar's Loss Mitigation Order violations.

8. In its Opposition to Loss Mitigation, Fay declines to participate in any loss mitigation proceedings, on the grounds that: (1) "this Debtor has been litigating this Loan for years, including numerous motions, an adversary proceeding and a currently pending appeal of this Court's order granting Fay's Motion for Summary Judgment with respect to the Complaint"; and (2) "because the parties have already completed court ordered loss mitigation on this Loan; and (3) the Debtor's Chapter 13 plan was not feasible and the Debtor "should not be allowed to file Chapter 13 Plans which are not feasible in hopes to obtaining a loan modification."

9. In a minute order dated Jul 27, 2021:

> Hearing Held; (RE: related document(s) 122 Order to Schedule Hearing (Generic), 120 Loss-Mitigation Request - By the Debtor Filed by Debtor Sean M Murray, 121 Objection to Loss Mitigation Request Filed by Creditor Specialized Loan Servicing LLC, 124 Order to Schedule Hearing (Generic)) Appearances by Debtor and Creditor Fay Servicing; Fay to provide payoff without prejudice to either party by 8/6/2021. Parties may confer on settlement and resolution of any matters as reflected in the record. Based on the pendency of the appeal in Murray v. Doe, A. P. No. 18-1141, the Court defers the consideration of the request to enter into loss mitigation until after a final determination on the merits of the appeal. Marked off without prejudice as reflected in the record. IT IS SO ORDERED by s/ Elizabeth S. Stong. Endorsed on Calendar dated 7/27/21. (This is a text Order, no document is attached). (cns)

10. The court accordingly has deferred consideration until after a final determination on the merits of the appeal.

11. Granting Movant's motion to compel abandonment would deprive the Bankruptcy Court jurisdiction over the Debtor Estate's interest in the subject property in the pending Adversary Proceeding and Appeal, and would be prejudicial to Debtor's pending claims as against SLS, Nationstar, Fay and Attorney Griswold.

**<u>SLS SAYS ITS A FREDDIE MAC MORTGAGE</u>**

12. Specialized Loan Servicing ("SLS") has attested to the mortgage being owned by Freddie Mac but Fay now says the VRMTG Asset Trust is Owner Trustee.

13. Debtor's Application for an Order to Show Cause at docket 43, page 29, contains a letter dated March 6, 2018, from counsel Deborah Turofsky, esq., for SLS, written in response to Debtor's February 24, 2018 Notice of Dispute, Error and Qualified Written Request for Substantiation and Original Creditor Information, that "This letter is to inform you, as per the Servicer, the instant loan is a Freddie Mac loan, and in relation to this loan, the Servicer does not need financial information for a loan modification review."

14. Docket 118, Notice of Appearance of Peter A. Lawrence, esq., of Stern & Eisenberg, PC, requests notice for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust. The notice itself is undated but was filed February 5, 2021.

15. Fay and Attorney Griswold have not filed Notice of Appearance in the instant bankruptcy case.

16. Attorney Griswold has previously filed documents into the Adversary Proceeding claiming representation of or interests on behalf of numerous different unrecognized or unrelated banks, creditors and servicers and explained it all away as typos.

17. Here we have two potentially adverse parties, SLS and Fay, allegedly servicing the same mortgage account, claiming different mortgage ownership while being represented by the same attorney.

## **THE PROPERTY IS NOT UNDERWATER**

18. Not only is the property not underwater, the current value as estimated by websites such as Zillow.com, is likely much lower than a broker appraisal with comparables, taking into account the subject property's significant improvements since the Debtor's petition was filed.

19. ¶20 of Fay's motion at dkt 127 is disputed as a typo or misunderstanding and the remainder disputed generally and specifically as supported herein.

20. Debtor requests leave of court, if the court concludes it is necessary, to schedule a legally cognizable appraisal for the purpose of establishing post petition valuation in a form the court would recognize as concrete evidence, if Debtor's Exhibit A, a Zillow Zestimate valuation of $437,200 for the subject property dated March 18, 2022, is deemed insufficient for the purpose.

21. Bankruptcy Code § 506(a)(1), also indicates that the court need not look solely to the Petition Date to value an interest. It directs that the value of a secured claim is determined "in light of the purpose of the valuation and of the proposed disposition and use of such property..." 11 U.S.C. § 506(a)(1).

22. It is also well recognized that under § 541(a)(6) postpetition appreciation of estate property inures to the benefit of the bankruptcy estate. Vu v. Kendall (In re Vu), 245 B.R. 644, 647-48 (9th Cir. B.A.P. 2000); Schwaber v. Reed (In re Reed), 940 F.2d 1317, 1323 (9th Cir. 1991); Paolella, 85 B.R. at 977 (citing Clark v. O'Neill (In re Clark), 711 F.2d 21, 23 (3d Cir. 1983)).

23. As explained in these cases, the term "proceeds" in § 541(a)(6) is sensibly read as encompassing post petition increases in value, regardless of whether an increase is a product of a reduction in the amount of a lien, the passage of time or some other market event.

24. In re Celentano, CASE NO.: 10-22833 (NLW), 10-11 (Bankr. D.N.J. Sep. 6, 2012), the Trustee correctly points out that there is no requirement in § 554 and Bankruptcy Rule 6007 that limits a determination of the value of estate property or the extent of a secured claim to a "snapshot" taken as of the petition date. Recognizing this, the Court in In re Siegel, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996) observed that:

> In the balancing of burden and benefit, this Court must recognize that values are seldom static over time and circumstance. Even when the identification of an estate interest is fixed as of the date of bankruptcy filing, its value to the estate may fluctuate during the period of estate administration. . . Section 554(b) looks generally to value for the estate, without focus upon the immediacy of any return.

25. In Siegel, the court declined to compel abandonment, stating that the trustee could still seek to maximize a return for creditors by either considering a discounted sale of the right of survivorship or a deferral of its sale to a later date when the whole property might be sold. Id. at 9.

26. Similarly, in the case currently before this court, the sale of estate property, the shares and lease of 3521 79th St 4E, may produce funds over debtor's homestead exemption considering the rate of inflation, pendency of Debtor and Plaintiff's Appeal, the Zillow valuation Exhibit B, and the rate of Alleged Secured Creditor's increased post petition fraudulent interest and fees.

**ABANDONMENT DEPRIVES JURISDICTION OVER PENDING LITIGATION**

27. The Debtor points out that Nationstar, while servicer, filed motion for relief from stay that was subsequently withdrawn resulting in Nationstar's counsel Attorney Samuels reportedly leaving the case and his law firm immediately after.

28. Debtor's Objection To Motion For Relief From Stay at dkt 31 and Debtor's Motion to Strike Nationstar Mortgage LLC's Notice at dkt 56 Withdrawing Motion For Relief From

Automatic Stay Post-Objection and Without Seeking Leave Via motion or Consent of Parties and Motion For Fees and Sanctions Pursuant To 28 U.S.C 1927 and 11 U.S.C 105(a) at dkt 65 were incorporated into the adversary complaint and remain active and subject to appeal in so far as the court ruled Debtors claims as raised in opposition to SLS's Motion for Summary Judgement instead of as incorporated into the adversary proceeding by debtors opposition and motion to strike.

29. Any abandonment of Debtor's Estate property would deprive the court of jurisdiction with respect to Debtor and Plaintiff ProSe's claims as incorporated into the adversary proceeding against Nationstar,.

**FRAUD ON THE COURT REGARDING DEBTORS PRE-PETITION FULL PAYOFF & PREJUDICE OF CONFLICT OF INTEREST AND CODE OF CONDUCT VIOLATIONS**

30. Fay strongly suspects that the purpose of Debtor's Second Loss Mitigation Request is to further delay the file and prevent the secured creditor from exercising its state court rights with respect to the Property.

31. Debtor applied for and was denied a stay pending appeal.

32. Attorney Griswold states that the Debtor has been significantly affected by the COVD, and upon information and belief, the Debtor does not have sufficient income. Additionally, it is alleged that the Loan itself is now several more years in default.

33. Attorney Griswold does not explain where he obtained his knowledge of Debtor's finances or how the Debtor was affected by "COVD", but Debtor maintains that the full payoff was improperly handled and fraudulently explained away by the 3 mortgage servicers, with Fay

refusing to provide valid payoff statements and lying about whether one was "requested" when ordered to provide one to Debtor by the court, "without prejudice".

34. Attorney Griswold's filings do not contain an attestation of an affiant with personal knowledge of any servicing transfer or mortgage documentation or transaction.

35. His conflict of interest and code of conduct violation of aiding and abetting mortgage servicer fraud on the court should preclude any filings from being made in the case until all facts are established and law applied by this court to any negative inference upon or disrepute among the judiciary or it's court officers.

36. Debtor hereby attaches as Exhibit B, Plaintiff-Appellant's Opening Brief from the District court appeal of SLS's Motion for Summary Judgement, and incorporates the brief in it's entirety as alleged herein, with ¶ 20-66 and ¶ 119-133 specifically outlining the alleged fraudulent and criminal conduct.

37. Debtor will be significantly prejudiced by Attorney Griswold's conflict of interest in representing two parties with differing or potentially adverse interests that will result in increased costs and expanded litigation, making separate confidential settlement with the parties impossible, in violation of Rule 1.7 of the New York Rules of Professional Conduct providing grounds for his removal or disqualification from the proceedings.

38. Second, Debtor will be prejudiced because of the fact that unilateral substitution of Fay for SLS, without complying with Federal Rules of Bankruptcy Rule 7025, which provisions application of Federal Rules of Civil Procedure regarding Rule 25(c) motion for substitution, will

result in releasing SLS from personal liability for allegations[1] not covered under the scope of Debtor's settlement agreement with Gross Polowy LLC and SLS.

39. Third, Debtor will be prejudiced by being forced to assume the inconvenience and expense of parallel proceedings in state and federal court involving common questions of law and fact.

40. Debtor claims Fay, Nationstar and SLS ("Defendants") personally and jointly caused Debtor's damages. Considerations of cost, judicial efficiency, and possible inconsistent results militate in favor of not requiring Debtor to prosecute two separate claims in two separate forums when both claims arise from the same set of facts.

41. Fifth, Debtor will be prejudiced by the risk of inconsistent verdicts as Defendants claim conflicting roles and capacities in an effort to evade liability. In a series of separate trials, each defendant can defend itself by blaming the absent party. In other words, Fay may assert that the servicing and full payoff was mishandled by SLS and Nationstar, and SLS may claim that Nationstar did not inform them of the payoff.

42. Put another way, denial of Debtor's request to amend the complaint could "permit each defendant in separate trials to defend itself by putting a proverbial 'empty chair' on trial, thus posing a significant risk of inconsistent verdicts that would all go against plaintiff." Lyons, 2004 U.S. Dist. LEXIS 20255 *17, n. 3; see also In re Prempro Prods. Liab. Litig., 2007 U.S. Dist. LEXIS 20214 (E.D. Ark. 2007) ("These Defendants probably should not be separated because,

[1] Claims subject to appeal as not liberally construed with respect to Plaintiff's pro se status, that were contemplated by the Plaintiff in the original adversary complaint under prayers for both declarative and incorporated relief regarding identity theft and fraud with respect to the subject change of address in lieu of response to the New York State Attorney General's Office of Consumer Fraud, the Loan Officer license applied for in the Arkansas Securities Department with the fraudulent address and Plaintiff's name and social security number, and the use of the fraudulent address in disputed IRS reporting involving Plaintiff's social security number.

when the time for apportioning fault comes, the drug manufacturers and the physicians may well blame each other."); B.D. v. DeBuono, 193 F.R.D. 117, 126 (S.D.N.Y. 2000); Kirk v. Metro. Transp. Auth., 2001 U.S. Dist. LEXIS 85 (S.D.N.Y. Jan. 3, 2001) (courts generally abstain from severing claims where separate trials risk inconsistent jury verdicts).

**MOTION TO AMEND IGNORED AS MOOT DEBTOR DELAYED PENDING APPEAL**

43. The court ignored Debtor and Plaintiff's motion to amend as moot once the district court took up the appeal portion of the motion. Debtor argues that efforts to resolve the issue were stalled in the face of argument that the pending appeal should be determined first.

44. Debtor seeks leave to amend to assert claims arising out of the same conduct and occurrences set out in the original adversary complaint seeking declaratory judgement, to articulate fraud and add parties participating in the actual theft of Plaintiff's identity.

45. These issues were characterized in Judge Stong's Order and Decision at docket 53 as "New Assertions" that were only raised in opposition to SLS's Motion for Summary Judgement, despite Debtor's position said same claims are incorporated by reference in consolidated motions from the underlying bankruptcy proceeding into the original adversary complaint. This was made clear in paragraph 23 of Debtor and Plaintiff's motion at docket 53.

46. Debtor seeks to demonstrate unresponsiveness on the part of the Defendants to New York State Attorney General's Office of Consumer Fraud and New York State Department of Financial Services complaints regarding the identity theft and full payoff, contributing to Plaintiff's claims that the Defendants breached the underlying mortgage contract in failing and refusing to respond as statutorily required to NOE, RFI and QWR's, improperly handling accounting and full payoff, violating the implied duty of good faith and fair dealing, failing and refusing to send a proper

breach (default) letter; slandering Plaintiff's title to the subject chattel property, failing and refusing to provide 90-day notice required by RPAPL § 1304 or comply with all applicable law as a condition precedent to attempting wrongful non-judicial dual-tracking foreclosures.

47. Fay is not a Party of interest as defined or implied and improperly states the post petition value of the Bankruptcy Estate property. Fay cites questionable accounting, fails to provide an affiant with personal knowledge or evidence of notice of service transfer in support of a motion to compel abandonment, seeks improper relief, and is essentially asking the court to close the bankruptcy case pending the outcome of a appeal from one parties summary judgement where another party has yet to file.

48. Not only has the Movant repeatedly cited the pending appeal as cause for delay, the court has deferred ruling on a pending loss mitigation application on account of the potential implications of the appeal.

49. The authorities Movant provided in support of the instant motion do not provide for the relief requested of closure of the case or compelling the Trustee to take a position already of record in the Trustee's report of no distribution.

50. The power of the court would be abused to entertain additional motion practice by the attorney in question in the instant case, that would lead to granting movant any relief under 554 [2]

---

[2] 11 U.S. Code § 554 - Abandonment of property of the estate
(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

or rule 6007(b) [3] until issues of fraud on the court are heard or reached by this court or resolved by the judgement of the district court.

51. 11 U.S. Code § 554(b) provides that a party of interest may move the court to order the trustee to abandon property of the estate. Fay does not have standing and Debtor's claims of conflict of interest and fraud have not been examined by the court, both of which, upon a finding of the court, would preclude movant from seeking the relief sought on standing as a threshold issue.

52. Debtor contends in the SLS MSJ Adv Pro appeal that the court has not reached the claims of fraud and breach of contract etc, by characterizing the claims as only raised in opposition to the motion for summary judgement.

53. Debtor maintains that the pre-petition full payoff payment to Nationstar was improperly reversed and not returned as alleged in response to the NYS DFS complaint regarding the mortgage.

54. Nationstar takes a different position when communicating with Trustee McCord, noting the payments were returned on account of MICR coding and other frivolous reasons in conflicting servicer notices debtor never received and suspects were created after the NYS DFS

[3] Rule 6007. Abandonment or Disposition of Property
(b) Motion by Party in Interest. A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate. Unless otherwise directed by the court, the party filing the motion shall serve the motion and any notice of the motion on the trustee or debtor in possession, the United States trustee, all creditors, indenture trustees, and committees elected pursuant to §705 or appointed pursuant to §1102 of the Code. A party in interest may file and serve an objection within 14 days of service, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct. If the court grants the motion, the order effects the trustee's or debtor in possession's abandonment without further notice, unless otherwise directed by the court.

complaint. The reason Nationstar would have different explanations and arguments with the NYS DFS and Bankruptcy Trustee is obvious to any impartial fact finder.

55. Nationstar lied to the NYS DFS when stating the payment was returned as short of a full payoff and 5 days late and to the the Bankruptcy Trustee when claiming MICR coding or other issues, when these explanations are weighed against Nationstar's discovery production of a ledger showing Debtor's full payoff deposited and reversed, not returned as claimed by Nationstar, SLS and Fay.

56. Nationstar, SLS and now Fay contend Debtor owes a post petition valuation including the fraudulent disputed amounts added and characterized as corporate advances, as Fay refuses to provide the Debtor with a payoff statement as ordered in the Court's minute order dated July 27, 2021, only to now attach a payoff statement to their motion which Movant characterizes as not valid for payoff purposes.

57. Fay's Appellee Brief (Dkt 10 pg 2 ¶ 4) in the district court appeal of SLS's MSJ, characterizes Plaintiff's efforts at resolution of the issues presented herein as "the latest installment in a series of vexatious litigation by the Appellant to avoid foreclosure of security on the Debtor's shares of the collateral corporation which entitle the owner to occupancy of the (subject) cooperative apartment".

58. These statements are an apparent violation of Plaintiff and SLS's Settlement Agreement as argued by Counsel for both SLS and Fay, and is made in an unsupported ad hominem attack to distract from the fact that Counsel for Fay, despite a lack of motion for substitution or demonstrated standing to file on behalf of SLS, has failed and refused in Fay's Brief (Dkt 10) to argue the facts or issues on appeal as presented in Plaintiff's Opening Brief.

59. Where Plaintiff's Adversary Complaint at R. 1 incorporates the Debtor's Objection (Dkt 31 18-01141) to Nationstars MFR (Dkt 26 18-01141), the Objection incorporates ¶ 24 & 25 comprising the totality of the Bankruptcy Court's "New Assertions" allegedly only raised in opposition to SLS's MSJ, but clearly raised and incorporated in the Objection (Dkt 31 ¶ 24& 25), Fay has failed and refused to respond.

## CONCLUSION

FOR ALL OF THE ABOVE REASONS, this Court should deny Movant's motion in it's entirety, removing or disqualifying Attorney Robert W. Griswold for conflict of interest and code of conduct violations, sanctioning Mr. Griswold, Fay, SLS, Nationstar and US Bank for fraud on the court, in the amount of reasonable attorney's fees, damages and costs.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Monday, April 18, 2022

By: SEAN M. MURRAY

SEAN M. MURRAY
P.O. BOX 1110
ALBANY, NEW YORK
12201-1110 U.S.A.
seanmurray@prodigy.net

# EXHIBIT - A -

**From:** **Zillow** my-home@mail.zillow.com
**Subject:** Your Home Report for 3521 79th St APT 4E - Zestimate and Neighborhood Updates
**Date:** March 18, 2022 at 2:04 PM
**To:** smm333@gmail.com

Z

**Zestimate: $437,200**

3521 79th St APT 4E, Flushing, NY
1 bd, 1 ba, 900 sqft
**Off Market**

See how it changed

**Average refinance rates are 3.3% APR.***
Could your home be costing you less? **Get started**

Zillow Group Marketplace, Inc. NMLS #1303160

## Median Neighborhood Zestimate

+0.3% past 30 days

**$487,931**

Learn more

## Just Listed

**$618,000**
**1 bd | 2 ba | 732 s...**
Jackson Heights

**$495,000**
**1 bd | 1 ba | 732 s...**
Jackson Heights

**$499,000**
**2 bd | 1 ba | 900 s...**
Jackson Heights

View More

## Sold Nearby

**$1,070,000**
**3 bd | 2 ba | -- sqft**
Jackson Heights

**$440,000**
**3 bd | 1 ba | -- sqft**
Flushing

**$235,000**
**1 bd | 1 ba | -- sqft**
Jackson Heights

View More

View More

Zillow, Inc.
1301 Second Avenue, Floor 31
Seattle, WA 98101
© 2006-2022

**Privacy policy | Unsubscribe from this email | Update your preferences**

**Representative refinance rates are based on a California state average from lenders quoting on Zillow for preliminary research purposes only. Actual available rates are subject to market fluctuations and will depend on a number of factors, including geography and loan characteristics. Zillow Group Marketplace, Inc. does not make loans and this is not a commitment to lend. Representative refinance rates are valid as of 03/18/2022 and are for a 15-year conventional mortgage loan of $350,000 at an interest rate of 3.159% with an APR of 3.3%, and a monthly payment of $2443, assuming a minimum credit score of 740 and loan-to-value ratio of 80%. Monthly payment amount is based upon principal and interest only. Taxes and insurance are not included in this estimate; the actual payment obligation may be greater. Final loan approval is subject to criteria established by a lender, including satisfactory appraisal, title review, and underwriting determination, among other criteria.*

# EXHIBIT - B -

Civil Action No. 21-mc-00178-LDH

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————x

*In re:* Chapter: 7

SEAN M. MURRAY Bankruptcy Case No. 17-44157

Debtor Pro Se Adv. Pro. No. 18-01141

———————————————————x

SEAN M. MURRAY

Appellant,

*-against-*

SPECIALIZED LOAN SERVICING, LLC, et. al,

Defendants

———————————————————x

# SEAN M. MURRAY Appellant Opening Brief

SEAN M. MURRAY
P.O. Box 1110
Albany, New York NY 12201
917.330.9284 smm333@gmail.com

# Table of Contents

**Page**

**Jurisdictional Statement……………………………………….….…...4**

**Introduction……………………………………………………….….5**

**Background…………………………………………………….….…7**

**Standard of Review……………………………………...….….…15**

**Issues Presented………………………………………………...16**

**Argument Summary…………………………………………………17**

**Arguments…………………………………………………………....18**

## Cases and Statutes

**28 U.S.C. § 1334(a)……………………………………………......………....4**

**28 U.S.C. §157 (a)………….…...……....……...……....……....…….....……...………..4**

**28 U.S.C.§ 158…….………....……....……....…….…....…….…....……...…….......…4**

**Judiciary Code Sections 157(b)(1) and 1334(b)……….……...……....……...……….....4**

**28 U.S.C. § 1409…….……....……....……...………………...……...…...…...……4**

**28 U.S.C. § 157(b)(2)(A), (B), (K)……………………....……....………………....……..4**

**Stern v. Marshall, 564 U.S. 462, 499 (2011)…….……....……....……...…..…………..4**

**Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, __, 135 S. Ct. 1932, 1940 (2015)**

**('RPAPL') Article 15" (R 1 ¶ 1)…….……...……....……....……………….....……………5**

**Real Estate Settlement Procedures Act ("RESPA")…….……...……............……....…7**

**Regulation X 12 C.F.R. § 1024.36 (Section 5 of RESPA)…….……...……....……....…7**

**In re Vincent Andrews Mgmt. Corp., 507 B.R. 78, 81 (D. Conn. 2014)…….……...…15**

**(quoting In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012)………….15**

**Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)….………...……...……..15**

**United States v. Hinkson, 585 F. 3d 1247, 1261-63 (9th Cir. 2009)….………...……....15**

**Hinkson, at 1263…….……...……...……...…….……….……...……...……...……15**

**477 U.S. at 248…….……...……...……...…….……….……...……...……...…….….…15**

**Jeffreys v. City of New York,426 F.3d 549, 553 (2d Cir. 2005)….………...……...……15**

**Anderson, 477U.S. at 248….………...……...……...………..…….……...……...……15**

**Anderson, 477 U.S. at 250 n. 4….………...……...……...…….……….……...……..16**

**CPLR 3408…….……...……...……...…….……….……...……...……...…….……..19**

**Flagstar Bank, FSB v. Walker, 946 N.Y.S.2d 850, 854 n.6 (Sup. Ct. 2012)……………19**

**U.S. Bank, N.A. v. Shinaba, No. 381917-09, slip op. at 9 (N.Y. Sup. Ct. July 31, 2013)…19**

**Wells Fargo Bank, N.A. v. Ruggiero, No. 19322-07, slip op. at 7-8 (N.Y. Sup. Ct. May 29, 2013)……………………………………………………………………………………19**

**One W. Bank, FSB v. Greenhut, 957 N.Y.S.2d 265 (Sup. Ct. 2012)……………………19**

**Davis v. Hollins Law Firm, _F.3d _, 2016 WL 4174747 (9th Cir. Aug. 8, 2016)………19**

**15 USC § 1692e……………………………………………………………………20**

**April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983); Harm v. Frasher, 181 Cal.App. 2d 405, 417, 5 Cal.Rptr. 367, 374 (1960)……………20**

**Witkin, Summary of California Law, Contracts, §744 (8th ed.)………………………20**

**Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997)…………………………………………………………………………20**

**Harm v. Frasher, 181 Cal.App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960)………………20**

**Wood v. Lucy, Lady Duff – Gordon, 222 N.Y. 88 (1917)…………………………………20**

**18 U.S. Code § 1028…………………………………………………………………22**

**In re 11 East 36th, LLC 1:15-cv-01541 SDNY…………………………………………22**

**UCC § 9-502(a)………………………………………………………………………23**

**UCC § 9-506…………………………………………………………………………23**

**UCC § 9-503(a)………………………………………………………………………23**

**UCC § 9-502 (e)……………………………………………………………………………23**

**Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 500; Israelson v Rubin, 20 AD2d 668, affd 14 NY2d 887; Lamberta v Long Is. R. R., 51 AD2d 730……………24**

**12 CFR 226.10(a), Regulation Z……………………………………………………………27**

**§ 1026.36(c)(1)(i)…………………………………………………………………………27**

**§ 1026.36(c)(1)(ii)…………………………………………………………………………27**

**Part 419 Conduct of New York State Business Rules………………………………………27**

**Former Official Interpretations to Reg. Z, ¶ 36(c)(1)(i)-2; 73 Fed. Reg. 44,522, 44,614…27 (July 30, 2008).**

**Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-1; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008)…………………………………………………………………………………27**

**Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-2; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008)…………………………………………………………………………………27**

**Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-3; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). ………………………………………………………………………………27**

**15 U.S.C. § 1639f(a)………………………………………………………………………27**

**15 U.S.C. § 1639f(b)………………………………………………………………………27**

**16 Reg. Z 12 C.F.R. §§ 1026.36(c)(1)(i)…………………………………………………27**

**1026.36(c)(1)(iii)……………………………………………………………………………27**

**15 USC § 1639f……………………………………………………………………………27**

**15 USC § 1666c……………………………………………………………………………28**

**UCC 3-603(b)………………………………………………………………………………28**

**New York State Real Property Actions and Proceedings Law ("RPAPL") § 1921……28**

**New York Real Property Law ("RPL") § 275……………………………………………28**

**Matzger v. Page, 62 Wash. 170, 113 P.254 (1911)………………………………………29**

**Kentucky Virginia Stone Co. v. Fortner, 159 Va. 234, 165 S.E. 401 (1932)……………29**

**J. WHITE & R. SUMMERS, HANDBOOK OFTHE LAW UNDER THE UNIFORM COMMERCIAL CODE §§ 13-18, at 443 (1972)………………………………………29**

**Comment, The Law of Tender in Texas, 29 BAYLOR L, REv. 325 (1971)……………29**

## Jurisdictional Statement

1.The district courts have original and exclusive jurisdiction over all bankruptcy "cases." 28 U.S.C. § 1334(a). Cases are referred to the bankruptcy court pursuant to 28 U.S.C. §157 (a) and then they are rerouted back to the district court for appellate review under 28 U.S.C.§ 158. This appeal is "from the interlocutory summary judgment" of the bankruptcy court adversary proceeding.

2.This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

3."Core proceedings include, but are not limited to . . . matters concerning the administration of the estate;" "allowance . . . of claims against the estate," and "determinations of the validity, extent, or priority of liens;" among other types of claims. 28 U.S.C. § 157(b)(2)(A), (B), (K). And as core matters, this Court has constitutional authority to enter a final judgment, because Mr. Murray's claims stem "from the bankruptcy itself." Stern v. Marshall, 564 U.S. 462, 499 (2011).

4.To the extent that the matters are not core proceedings pursuant to Judiciary Code Section 157(c), Mr. Murray has indicated his consent to this Court entering a final judgment in the Complaint. Compl., ECF No. 1 ¶ 8. SLS and Nationstar have also consented to this Court entering a final judgment. Dec. 3, 2020 Hearing Tr. at 5:22-6:02, 10:15-21. See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, __, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-

core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding").

## Introduction

5.The adversary proceeding at issue began on December 21, 2018, when the Plaintiff-Appellant filed a complaint, ( R. 1) against Nationstar Mortgage LLC dba Mr. Cooper ("Nationstar") and Specialized Loan Servicing LLC ("SLS"), and unnamed John and Jane Doe Corporations and Entities.

6.The Complaint states the action is brought "pursuant to New York Real Property Actions and Proceedings Law ('RPAPL') Article 15" (R 1 ¶ 1) seeking a declaratory judgment avoiding, canceling, and discharging the note and mortgage of record referred to below, and attacking the nature extent and validity of such lien which affects the real property . . . and preserving them for the benefit of the Debtor's estate.

7.The first claim for relief (R. 1 ¶ 41-45) seeks a declaration that there is no amount due under the mortgage on the proprietary shares in a cooperative living corporation and lease securing tenancy in 35-21 79th Street, Unit 4E, Jackson Heights, NY 11372 (the "Property").

8.The second claim for relief (R. 1 ¶ 46-52) seeks a declaration that Plaintiff-Appellant holds exclusive title to the Property.

9.The third and "consolidated" claim for relief (R. 1 ¶ 52-56) incorporates opposition and motions for contempt, sanctions, lost wages, costs, fees, and actual, treble, punitive, and statutory damages.

10.By order (R. 45) dated December 15, 2020, the bankruptcy court entered judgment against Plaintiff-Appellant on each claim.

11.On January 14, 2021, Plaintiff-Appellant filed a motion (Dkt 1) for leave to appeal the bankruptcy court's December 15, 2020 order granting Specialized Loan Servicing, LLC's motion for summary judgment, pursuant to 28 U.S. Code § 158(a)(3).

12.On March 8, 2021 Fay Servicing, LLC filed a letter (Dkt 3) requesting clarification of the Court's March 2, 2021 order.

13.On Mar 26, 2021 Plaintiff-Appellant's motion for leave to appeal the bankruptcy court's interlocutory order was GRANTED.

14.On March 15, 2021 Specialized Loan Servicing, LLC was directed to respond to Plaintiff's motion for leave to appeal the bankruptcy court's interlocutory order.

15.On March 22, 2021 Fay Servicing, LLC as servicer for US Bank Trust National Association filed a REPLY OF FAY SERVICING, LLC IN RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND OR APPEAL (Dkt 4) in Opposition re 1 MOTION for Leave to Appeal Bankruptcy Court case number 1-18-01141.

16.The Reply was signed by Robert W. Griswold Bankruptcy Attorney LOGS Legal Group LLP f/k/a Shapiro, DiCaro & Barak, LLC Attorneys for Fay Servicing, LLC as servicer for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust.

17.Plaintiff-Appellant filed a Apr 12, 2021 Letter MOTION for Extension of Time to File Opening Brief as per March 26, 2021 Electronic Order.

18.On Apr 14, 2021 Plaintiff-Appellant's motion 6 for extension of time to file was GRANTED.

19.On Apr 23, 2021 Plaintiff-Appellant's motion 7 for extension of time to file was GRANTED. Directing Plaintiff-Appellant's opening brief shall be due May 10, 2021.

## Background

20.Plaintiff-Appellant discovered that advances and attorney's fees were being incorrectly and fraudulently added to the subject mortgage account in late 2013 early 2014.

21.This was subsequently confirmed by the mortgage servicer in a telephone conversation on May 7, 2014 with Carolyn Strozyk of Customer Service.

22.This conversation is memorialized in a letter (Ex. A) from Carolyn Strozyk, Director, Mortgage Service Center, Customer Service, confirming the call, the subject of which was the amounts added to the mortgage account by the coop as corporate advances.

23.On June 6, 2014, Plaintiff-Appellant sent a qualified written request ("QWR") disputing the account. The servicer spent nearly two months to disclose the ownership of the loan and copies of documents.

24.Plaintiff-Appellant's June 6, 2014 notice informed the servicer of Plaintiff-Appellant's claims of conversion of the original instrument of indebtedness and breach of the mortgage contract for failure to validate or correct the corporate advances added to the mortgage account.

25.The Real Estate Settlement Procedures Act ("RESPA") and its implementation Regulation X 12 C.F.R. § 1024.36 (Section 5 of RESPA) only allows ten days for responding to requests for the ownership of the loan, and not later than 30-45 days for other requests for information.

26.HSBC MORTGAGE CORPORATION, HSBC BANK USA N.A., MORTGAGE SERVICE CENTER, and PHH MORTGAGE CORPORATION failed and refused to respond as required by RESPA to Appellant's QWR RFI NOE.

27.This is evidenced by letters (Ex. B) dated June 24, 2014, August 5, 2014 and two August 7, 2014 letters referencing a June 11, 2014 QWR letter sent June 6, 2014. The letters were on

HSBC letterhead and signed by representatives of PHH MORTGAGE CORPORATION as servicing agent for HSBC.

28.Plaintiff-Appellant rescinded for cause of the Power of Attorney granted to HSBC at the closing March 20, 2008, as acknowledged by the September 8, 2014 letter (Ex. C) signed by Jana Hunt of Mortgage Service Center.

29.The RESPA violation and servicer failure and refusal to address the corporate advances is evidenced by ledgers (Ex. D) showing the advances on the account dated January 8, 2015 and sent September 21, 2015 in response to Plaintiff-Appellant's September 10, 2015 grievance letter.

30.A requested a payoff quote from HSBC (Ex. E) dated June 7, 2014, detailed the current balance at $169,271.90 including total interest of $1,073.94 and "Recoverable Balance" of $5,706.56 for a total amount due as of June 10, 2014 of $176,122.56.

31.The payoff statement confirmed the ledger (Ex. D) featuring the corporate advances added to the mortgage account and put Plaintiff-Appellant on notice of a change in servicer that went without notification to Plaintiff-Appellant as required under RESPA. The payoff statement stated that a Wells Fargo Bank account was to receive payoffs on behalf of Mortgage Service Center.

32.Plaintiff-Appellant's grievance letter and notice of claim in recoupment and was incorporated into New York State Attorney General Office of Consumer Frauds complaint against the conduct and unresponsiveness of the mortgage servicers to the accounting errors on September 11, 2015.

33.The New York State Attorney General's Office confirmed receipt of the complaint in a September 23, 2015 letter (Ex. F) signed by Elizabeth Rodgers of the Bureau of Consumer Frauds and Protection.

34.The Attorney General's Bureau of Consumer Frauds and Protection policy to intervene in a dispute resulted in both the law firm representing the servicer and the servicer responding to the complaint and grievance under penalty of perjury. The law firm responded by disparaging Plaintiff-Appellant and the Pro Se efforts to address the issues presented in the QWRs and grievance.

35.Attorney David P. Case, Esq., of FEIN, SUCH & CRANE, LLP wrote on behalf of the Law Firm representing the servicers at the time in a letter addressed to Ms. Rodgers of the Bureau of Consumer Fraud dated October 5, 2015.

36.Attorney Case's letter notably references the subject property as "Shares of Stock and Proprietary lease that allows Mr. Murray to possess the premises commonly known as 35-21 79th Street Unit 4E, Jackson Heights, New York 11372."

37.Ms. Rodgers wrote Plaintiff-Appellant November 12, 2015 and included the law firm and servicer's responses to the investigation (Ex. G).

38.PHH Mortgage Corporation as servicing agent for HSBC responded to the AG's investigation by providing Ms. Rodgers with confirmation of a cease and desist on the account.

39. HSBC sent Plaintiff-Appellant a letter (Ex. H) on October 19, 2015, giving notice of an unrequested change of address on the account from: Sean Murray, 35-21 79TH STREET 4E, JACKSON HEIGHTS NY 11372 to: ATTN: COMPLEX TEAM SV01, 1 MORTGAGE WAY, MOUNT LAUREL, NJ 08054.

40.Plaintiff-Appellant corresponded through counsel with the servicer in December of 2015, attempting to change the title on the Shares and Lease to a Revocable Trust. The trust and the full

payoff were the subjects of Trustee McCord's January 9, 2018 withdrawn[1] rule 2004 request for examination of the debtor in Plaintiff-Appellant's underlying Bankruptcy proceeding. (EDNY BK 18-01141-ess Dkt 28)

41.HSBC responded December 21, 2015 by providing (Ex. I) the affidavit, signature and Acknowledgment form for living trusts and subsequent rejection without sufficient explanation.

42.Nationstar Mortgage LLC ("Nationstar") acquired servicing in December of 2016.

43.Nationstar's adversary proceeding discovery responses to Plaintiff-Appellant's demands show all correspondence regarding the mortgage account was addressed to the fraudulent PHH Mortgage Corporation, 1 Mortgage Way, Mount Laurel, NJ address (Exhibit G), giving Plaintiff-

---

[1] Mr. McCord,
SEAN M. MURRAY P.O. Box 1110
Albany, N.Y. 12201-1110
Sent Via Email: rmccord@certilmanbalin.com
Re: SEAN M. MURRAY Chapter 7 Bankruptcy Case No: 117-44157-ess

I have received your request dated October 5, 2017 and have provided the explanation below and attached bank statements to the email accompanying this response.
The correspondence referenced in your letter from Chandler Williams of Mr. Cooper (Nationstar) to Bonnie Filip of NYS Department of Financial Services dated August 22, 2017, describes a third party payment made on my behalf from what I understand to be a restricted book-entry securities account that I do not control and have been unsuccessful at communicating and perfecting a security interest in and entitlement to with respect to any potential adverse claim I may have in the investment property.
The third party payment, to my knowledge, has not been returned and in my view the bank would be the appropriate party to answer the questions posed in your letter, or explain their response to the NYS DFS. As I am not an attorney or cpa, nor received advice of counsel with respect to this issue, my articulation of the source of funds may be lacking. However, the documentation and statements made by Nationstar, Mr. Cooper or their representatives or attorneys have been, in my view, false and misleading at best, and at worst, representative of possible violations of Title 18 of the United States Code sections 656 and 894. The debt in question has not been verified or substantiated. The letter to Bonnie Filip states they received payment August 15, 2017 and the return receipts signed by representatives of Gross Polowy LLC and Nationstar are dated August 10, 2017 (making the payment complete, valid and not a short payoff). Compliance with Part 419 Conduct of New York State Business Rules would require the servicer to apply partial payment. The contract address they repeatedly reference in their correspondence and documentation is PHH Mortgage Corporations' 1 Mortgage Way, Mount Laurel New Jersey address. It is my position that the documentation and facts mentioned above are evidence of knowing and egregious violations of Federal and New York State Debt Collection Procedure, FCRA, RESPA and TILA, and contain false and misleading statements, simulations of legal or judicial process and sanctionable ethical and professional misconduct. The bank has also potentially violated Title 11 United States Code section 362.
Please find the bank statements requested also attached to the email containing this letter.
SEAN M. MURRAY

Appellant no notice of the servicer change or change in cease and desist HSBC referred to in response to the NYS AG complaint.

44.Gross Polowy LLC, as attorney for Nationstar, first corresponded with Plaintiff-Appellant June 13, 2017 giving notice (Ex. J) of an unpaid balance totaling $228,360.72, that including, among other charges, $24,408.43 in Condo/HOA dues. The subject property is a Cooperative Living Corporation not a Condo with HOA dues. These additional amounts continued being added to the mortgage account without explanation of the accounting or validation, verification or substantiation of the debt as requested and required by the Fair Debt Collection Procedures Act.

45.Plaintiff-Appellant issued a QWR noticing Nationstar of the error and requesting information regarding the acquisition of servicing after the NYS AG complaint and cease and desist sent in response by HSBC.

46.Gross Polowy LLC and Nationstar were unresponsive to the QWR, and Nationstar subsequently refused to issue a payoff statement despite Plaintiff-Appellant's formal request. (Ex. K)

47.Immediately following Plaintiff-Appellant's registering of a CFPB complaint, Gross Polowy LLC emailed a payoff statement (Ex. S) for $238,176.40 including but limited to $24,408.43 in fraudulent Condo/HOA Dues and $15,279.48 in unauthorized late fees, attorneys fees and escrow advances. Nationstar later issued a payoff statement addressed to Gross Polowy LLC at the PHH Mortgage Corporation address fraudulently associated with the mortgage account.

48.Plaintiff-Appellant executed a grievance letter dated July 21, 2017. (Ex. L)

49.The July 21 grievance was forwarded to the New York State Attorney Generals Office of Consumer Fraud, who referred the complaint to the New York State Department of Financial Services ("DFS"). (Ex. M)

50.Nationstar Customer Relations Specialist, Chandler Williams, responded to the complaint in a letter (Ex. N) dated August 22, 2017 addressed to Bonnie Filip of the DFS.

51.Nationstar's letter[2] to the DFS sought to explain Plaintiff-Appellant's complaints regarding the full payoff quote refusal and the subsequent mishandling of the tendered full payoff.

52.Plaintiff-Appellant filed a bankruptcy petition August 10, 2017 that was discharged December 8, 2017. (EDNY BK 18-01141-ess Dkt 1, 24)

53.On December 13, 2017 Nationstar moved for relief from stay (EDNY BK 18-01141-ess Dkt 26) to foreclose without filing a proof of claim. Plaintiff-Appellant's Opposition to that motion is incorporated into the adversary proceeding through the consolidated claims for relief. (R. 1 ¶ 15c)

54.Nationstar then sold the servicing to Specialized Loan Servicing ("SLS") December 17, 2017 pending the hearing on Nationstar's motion for relief from stay and without notice to the bankruptcy court, trustee or debtor (Plaintiff-Appellant).

[2] The letter stated in part: "Our records do not reflect any error regarding the information provided to him in the subject phone calls. Please note that a payoff request may not be completed in the same day, as we must request the appropriate fees and costs so that a correct Payoff Statement can be calculated…Gross Polowy's response to Mr. Murray on August 2, 2017, responded to all of his concerns regarding the foreclosure file and notices that have been sent to him under New York State law…Our records reflect we are appropriately servicing the account in accordance with New York State law…Upon further review, Mr. Murray filed a voluntary petition under a Chapter 7 Bankruptcy on August 10, 2017. As such, the foreclosure has been placed on hold and the scheduled foreclosure sale date has been removed. Our records further reflect that a short payoff of $238,176.42 was received on August 15, 2017. It was determined that the above amount received was $309.78 short of a full payoff. Please note that a full payoff must be received in order to apply the funds to the account. As such, please note the $238,176.42 is being returned. A Transaction History is enclosed for review…Our records indicate Federal Home Loan Mortgage Corporation (Freddie Mac) is the current owner of the loan."

55.Plaintiff-Appellant filed opposition and application for loss mitigation in the bankruptcy (EDNY BK 18-01141-ess Dkt 31-32) on January 15, 2018 which was granted February 23, 2018 with respect to Nationstar dba Mr. Cooper. (EDNY BK 18-01141-ess Dkt 34)

56.SLS sent Plaintiff-Appellant a February 13, 2018 notice of auction of the subject Shares and Proprietary lease (Ex. O) representing Nationstar as the secured creditor despite the UCC 3 assignment dated December 17, 2017 naming SLS as secured creditor.

57.SLS's February 13, 2018 letter deprived Plaintiff-Appellant of the 90 day New York State pre-foreclosure notice ("RPAPL 1304 notice") and the change in servicer notice required by RESPA.

58.The consolidated motions representing Plaintiff-Appellant's Third Claim for Relief in the adversary complaint (R. 1 ¶ 52-56) address both Defendants efforts to game the Pro Se Debtor (Plaintiff-Appellant) while dual-tracking the mortgage by filing for relief from stay in the name of one servicer and transferring servicing to SLS who, scheduled a non-judicial auction of the property without notice, or filing a proof of claim in the bankruptcy proceeding, in violation of the bankruptcy courts Loss Mitigation rules and orders dated February 23, 2018 and April 10, 2018. (EDNY BK 18-01141-ess Dkt 34, 55)

59.Plaintiff-Appellant and Gross Polowy LLC entered settlement discussions with respect to several motions for contempt and sanctions and orders to show cause resulting in the subject settlement agreement. (EDNY BK 18-01141-ess Dkt 82)

60.Plaintiff-Appellant's Opposition (R. 33) to SLS's Motion for Summary Judgement (R. 28) in the Adversary Proceeding details the identity theft in more detail and provides exhibits of the Lexis Nexis Credit Report featuring the Securities License applied for with the identity theft

address and SSN and the reporting to the IRS of a loan originating in 2016 with much different principal balance information than provided to the court.

61.In SLS's MSJ (R. 28 ¶ 45-52), Counsel for SLS, Robert W. Griswold, Esq., makes reference to the issue of party in interest and then signs the pleading as Attorney for Nationstar Mortgage LLC as Servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for Home Equity Loan Trust 2007-FRE1.

62.This was explained as a typo and represents the third servicer Attorney Griswold purports to represent in the same proceedings (SLS, Fay and Nationstar). Either Attorney Griswold is confused or the parties are engaged in violations of 15 U.S.C. § 1641 (f)(2).

63.Attorney Griswold filed an Affidavit Re: Possession (R. 37) on behalf of SLS May 26, 2020, purporting to have in hand possession of the note.

64.Plaintiff-Appellant objected to the lack of timeliness in filing the affidavit after the motion for summary judgement was filed and opposed at the hearing conducted June 2, 2020 transcript. (Tr. 2020-06-02 pg 6 16 to pg 7 line 9)

65.Plaintiff-Appellant added SLS to the grievance letter October 1, 2020. (R. 48 Ex. B) SLS was unresponsive to the subsequent NYS Department of Banking investigation of the October 1, 2020 grievance letter. Nationstar responded claiming (R. 48 Ex A) to now be the servicer, in conflict with their filings in the adversary proceeding. (R. 28, 34, 37-39, 42-43)

66.The DFS sent a response (Ex. Q) dated February 16, 2021 to Plaintiff-Appellant's October 2020 complaint (R. 48 Ex. B) from Elavon, a party with no known relationship to the payoff or Plaintiff-Appellant. Their response included a incomprehensible and inapplicable ledger of

accounting and chargeback, clearly unresponsive to Plaintiff-Appellants complaint (R. 48 Ex. B) regarding the tendered full payoff of August 10, 2017.

## Standard of Review

67."Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re Vincent Andrews Mgmt. Corp., 507 B.R. 78, 81 (D. Conn. 2014) (quoting In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012)). However,"[a] grant of summary judgment is reviewed de novo by the appellate court."

68. If the court failed to apply the correct legal standard then it has "necessarily abuse( d) its discretion" Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

69.The abuse of discretion test involves two distinct determinations: first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous. United States v. Hinkson, 585 F. 3d 1247, 1261-63 (9th Cir. 2009).

70.Factual findings are clearly erroneous if they are "illogical, implausible, or without support in inferences that may be drawn from the record" Hinkson, at 1263.

71.A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York,426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477U.S. at 248.

72.The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S.

at 250 n. 4. The failure to meet this burden warrants denial of the motion. Id. However, in the event this initial burden is met, the opposing party must then show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

## Issues Presented

A. Did the Court err in its application, interpretation and construction of Plaintiff's Pro Se pleadings?

B. Did the Court err by not incorporating a more liberal construction of Plaintiff's pleadings in support of a conclusion that Defendant SLS has failed and refused to litigate in good faith, in breach of contract and code of conduct?

C. Did the Court err in its conclusion regarding SLS's Lien Perfection and independently that the inadequate description of collateral in the financing statement constituted a minor error that was not seriously misleading?

D. Did the Court err in the untimely incorporation and consideration of the controverted Griswold Affidavit of Possession?

E. Did the Court err in its conclusions regarding the scope, extent and applicability of the Settlement Agreement between Plaintiff, SLS and Gross Polowy LLC?

F. Did the Court err in its conclusions regarding Plaintiff's Tender of Payment in full made subject to a Payoff Statement prior to the bankruptcy petition, and independently whether tender of payment discharges the underlying debt and whether returned payment renders the underlying security interest unenforceable?

G. Did the Court err in its conclusions that the "New Assertions" that Plaintiff raises in his Opposition and Supplemental Opposition to SLS's Motion for Summary Judgment do not amount to claims incorporated into the complaint through the Consolidated Motions against SLS in this adversary proceeding, and independently whether Plaintiff is entitled to amend claims in the Adversary Complaint to incorporate the "New Assertions".

## Argument Summary

73.The Bankruptcy Court made three errors in the decision and order on SLS's Motion for Summary Judgement.

74.First, it gave undue weight to heresy evidence in considering the servicer's letters (R. 41 Ex. D, E) to the trustee. The trustee had an adverse interest in the debtor's estate and the servicer's letters to the trustee in explanation of the full tender and payoff of August 10, 2017 contradicted both by the servicer's response to the New York State Department of Financial Services (R. 41 Ex. B) explaining incorrectly that the payment was received 5 days late rendering the payoff $300 short, and an accounting ledger (R. 41 Ex. G) provided by Nationstar in response to discovery demands.

75.Second, the Bankruptcy Court applied the seriously misleading standard in determining whether the name of the Cooperative Living Corporation in the collateral description of the UCC-1 financing statement securing the mortgage. Plaintiff-Appellant argues the nature of the subject property has been misrepresented as real property to justify evaluating the financing statement's perfect of interest. Personal property description of collateral that are non-existent and differ from the security agreement do not perfect an interest or secure in the subject property.

76.Third the court failed to construe the "New Allegations" as incorporated consolidated relief sought against SLS and Nationstar for personal liability for continued acts of identity theft and fraud with respect to the misrepresentations regarding the tendered full payoff and the cease and desist address change.

## Arguments

**A. Did the Court err in its application, interpretation and construction of Plaintiff's Pro Se pleadings?**

**Preservation on Appeal:**

77.This issue is preserved by the Bankruptcy Court summary judgement order. (R. 50,51)

78. Appellant raised the issue of the parties bad faith conduct and alleged coordinated campaign to delay the proceedings throughout the hearings on the opposition to summary judgement and thought the incorporated claims for relief and request for declarative relief as outlined in the Complaint. (R. 1)

**Discussion:**

79. The Bankruptcy Court made reference to Appellant's Pro Se status but did not include the liberal standard approach when considering Appellant's requested declarative relief incorporating the totality of the conduct represented by the lack of a response to Appellant's original grievance letter under the mortgage contract with HSBC and the unilateral change of address resulting in the theft of Appellant's identity and use of the address to simulate legal process by engaging in two separate non-judicial foreclosure auction attempts without notice to the Appellant. The consolidated motions are not resolved to the extent SLS and Nationstar are employing a legal strategy to avoid dual tracking and mortgage servicer fraud allegations supporting a view of

breach of contract founded in part on the piercing the corporate veil approach to alter ego liability.

**B. Did the Court err by not incorporating a more liberal construction of Plaintiff's pleadings in support of a conclusion that Defendant SLS has failed and refused to litigate in good faith, in breach of contract and code of conduct?**

**Preservation on Appeal:**

80.This issue is preserved by the Bankruptcy Court summary judgement order. (R. 50,51)

81. Appellant raised the issue of the parties bad faith conduct and alleged coordinated campaign to delay the proceedings throughout the hearings (Tr. BKNYED00565 2020-06-02) (Tr. BKNYED00567 2020-06-02) (Tr. 49 pg 6-9) on the opposition to summary judgement and through incorporated claims for relief and request for declarative relief as outlined in the Complaint. (R. 1)

**Discussion:**

82.For purposes of CPLR 3408, "[c]onduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations [during settlement conference proceedings] have been held to constitute 'bad faith.'" Flagstar Bank, FSB v. Walker, 946 N.Y.S.2d 850, 854 n.6 (Sup. Ct. 2012); U.S. Bank, N.A. v. Shinaba, No. 381917-09, slip op. at 9 (N.Y. Sup. Ct. July 31, 2013); Wells Fargo Bank, N.A. v. Ruggiero, No. 19322-07, slip op. at 7-8 (N.Y. Sup. Ct. May 29, 2013); One W. Bank, FSB v. Greenhut, 957 N.Y.S.2d 265 (Sup. Ct. 2012).

83.The Court in *Davis v. Hollins Law Firm, _F.3d _, 2016 WL 4174747 (9th Cir. Aug. 8, 2016)* observed that the overarching purpose of the FDCPA "is to prevent debt collection actions that frustrate consumers' ability to chart a course of action in response to a collection effort." Id. at

84. 15 USC § 1692e prohibits the "false, deceptive, or misleading representation or means in connection with the collection of any debt."

85. The Second Circuit has noted that "[a]lthough courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss."

86.The Duty of Good Faith and Fair Dealing imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose. April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983); Harm v. Frasher, 181 Cal.App. 2d 405, 417, 5 Cal.Rptr. 367, 374 (1960).

87.A party to a contract breaches the implied covenant of good faith and fair dealing by interfering with or failing to cooperate with the plaintiff in the performance of the contract. Witkin, Summary of California Law, Contracts, §744 (8th ed.); see also Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997); Harm v. Frasher, 181 Cal.App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960).

88.It is widely recognized that New York was the first jurisdiction to identify the duty of good faith and fair dealing as an implied covenant that made a contract enforceable. See Wood v. Lucy, Lady Duff – Gordon, 222 N.Y. 88 (1917).

89.Both Defendants in the adversary proceeding have produced documentation in discovery evidencing use of the fraudulent PHH MORTGAGE 1 MORTGAGE WAY in a the theft of Plaintiff-Appellant identity for the purposes of Mortgage Servicer Fraud.

90.The transcript dated July 22, 2019 (Tr. BKNYED00563 2019-07-22 pg 5 lines 8 to pg 7 line 3) contains a brief exchange illustrating the Plaintiff-Appellant's many and varied attempts to hold the Defendants to the same standard Plaintiff-Appellant was to be held to. Repeatedly, meritorious objections were ignored or brushed aside. The court stated in response to a clarification requested by the Debtor regarding a local rule conflicting with the Federal Rules of Procedure that "I think the district may have opted out of those restrictions, but it was a long time ago that I was a litigator, so — in all events, I always encourage parties to focus more — or at least as much on the substance of the requests as in the counting them up and seeing if the number is twenty-four or twenty-six or thirty-seven or whatever." And, "Well, so has — let's try to focus on the substance here, because that's going to help us prepare for trial."

91.(Tr. BKNYED00563 2019-07-22 page 11 lines 8 through 18,) The court overruled Plaintiff-Appellant's objection to late discovery responses from Nationstar, despite Plaintiff-Appellants objection. (Tr. BKNYED00563 2019-07-22 page 12 line 22 through 24)

92.The court stated (Tr. BKNYED00563 2019-07-22 page 18 lines 17 through 22) that "Summary Judgement comes after working out a discovery schedule. Summary Judgement typically comes after discovery is complete."

93.Despite this statement and Plaintiff-Appellant requesting that Defendants be compelled to produce and complete Discovery, the court reversed it's position.

94.On page 14 lines 7 through 25 and page 15 lines 1 through 25 detail an interaction where the court accused the Plaintiff-Appellant of editing Exhibits offered as evidence of late submission of discovery demands, only to realize the court was mistaken, and despite Plaintiff-Appellant's point regarding equal treatment of the parties, the court allowed the late discovery anyway.

95.18 U.S. Code § 1028 - Fraud and related activity in connection with identification documents, authentication features, and information (a) Whoever, in a circumstance described in subsection (c) of this section—(7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law;

96.Mortgage servicing fraud generally involves the diversion or misuse of principal and interest payments, loan prepayments, and/or escrow funds for the benefit of the service provider.

**C. Did the Court err in its conclusion regarding SLS's Lien Perfection and independently that the inadequate description of collateral in the financing statement constituted a minor error that was not seriously misleading?**

**Preservation on Appeal:**

97.This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and Tr. BKNYED00565 2020-06-02.

**Discussion:**

98.A security agreement cannot perfect collateral that is not described in the financing statement. Existence of collateral in a security agreement without the corresponding inclusion in the financing statement will not perfect a claim, because a security agreement cannot "perfect" anything.

99.This principle is illustrated by a 2015 case, In re 11 East 36th, LLC.

> In that case, the debtor granted a security interest in its membership interest in its subsidiary. The financing statement, however, neglected to include the membership interest in its description of the collateral. In the debtor's bankruptcy case, the court held that the secured party's lien on the membership interest was

unperfected and subject to avoidance, because the membership interest was not listed in the financing statement as a part of the collateral.

100.SLS acknowledges that the correct name of the tenants corporation is "35-21 79 St Tenants Corp," and that the name as set forth in Section 4 of the UCC-1 Financing Statement is "235-21 79 St Corp". (R. 28 ¶ 33, 35)

101.UCC § 9-502(a), provides, in relevant part, that "a financing statement is sufficient only if it (3) indicates the collateral covered by the financing statement."

102.The seriously misleading standard NY UCC § 9-506 only applies to the financing statement legal description and debtor's name in (b) [Financing statement seriously misleading.] Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9-503(a) is seriously misleading.

103.UCC § 9-502 (e) Contents of cooperative addendum. A cooperative addendum is sufficient only if it satisfies subsection (a) and also:

> (1) if not filed simultaneously with the initial financing statement, identifies, by its file number, the initial financing statement to which the addendum relates;
> (2) indicates the street address of the cooperative unit;
> (6) indicates the name of the cooperative organization.

**D. Did the Court err in the untimely incorporation and consideration of the controverted Griswold Affidavit of Possession?**

**Preservation on Appeal:**

104.This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and Tr. BKNYED00565 2020-06-02.

**Discussion:**

105.Plaintiff-Appellants objections to the timeliness and validity, characterized as "doubts" about the Griswold Affidavit of Possession, were made in supplemental opposition and in the hearing.

106.The affidavit of possession (R. 37) consisted only of the bare affirmation of SLS's attorney who demonstrated no personal knowledge of the mortgage servicing documents and history surrounding Plaintiff-Appellants claims in recoupment. Such an affirmation by counsel is without evidentiary value and thus unavailing (Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 500; Israelson v Rubin, 20 AD2d 668, affd 14 NY2d 887; Lamberta v Long Is. R. R., 51 AD2d 730). The record contains no affidavit of an employee or of any eyewitness and no transcript of any examination before trial, Plaintiff-Appellant's preserved objection was made for an adjournment of the motion to permit any such examination; no identification of the hypothetical "other witnesses to the occurrence", with an accompanying statement as to the substance of their testimony and explanation for failure to submit affidavits from them, was proffered.

107."[a]ffidavits composed of hearsay do not satisfy Rule 56(e) and must be disregarded,"' 5 and that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."This legal rule, m turn, is based upon Rule 56(e), which states that affidavits on a summary judgment motion "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence.

108. The COVID-19 pandemic was used to justify the use of an Affidavit of Possession rather than SLS being forced to produce a non-existent, destroyed or unenforceable note.

109.The Bankruptcy court provided no opportunity or hearing for Murray to oppose the affidavit in the proceedings.

110.This is ripe for abuse to remedy a deficiency in papers by employing a procedural basis to preclude the need to evidence claims of Secured Creditor, Servicer etc.

111.The only reason original notes are endorsed in blank is because the original lender did not know what sponsor was going to purchase them or what trust they would be going into.

112.The original lender, HSBC, a non-party to VRMTG Asset Trust, can not use a blank endorsement that is effective beyond the sponsor of the trust.

**E. Did the Court err in its conclusions regarding the scope, extent and applicability of the Settlement Agreement between Plaintiff, SLS and Gross Polowy LLC?**

**Preservation on Appeal:**

113.This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and Tr. BKNYED00567 2020-10-20.

**Discussion:**

114.Settlement agreement executed was constrained to the "Motions for Orders to Show Cause, including allegations of violations of the bankruptcy automatic stay violations father bankruptcy discharge injunction contempt of court action in bad faith and violation of the loss mitigation order." and not broad and comprehensive with respect to failure to be in compliance with all applicable law as a condition precedent to foreclosure or any of the "New Allegations" not considered in the Decision and Order"

115.The scope of the settlement doesn't include identity theft, fraud, dual tracking, mortgage servicer fraud or servicer as a convenience implications.

**F. Did the Court err in its conclusions regarding Plaintiff's Tender of Payment in full made subject to a Payoff Statement prior to the bankruptcy petition, and independently whether tender of payment discharges the underlying debt and whether returned payment renders the underlying security interest unenforceable?**

**Preservation on Appeal:**

116.This issue was preserved by R. 37, the Bankruptcy Court's interlocutory summary judgment order. (R. 50-51)

117.This issue is preserved by Tr. BKNYED00565 2020-06-02 pg 10 lines 1-15, pg 18-19.

118.The issue is preserved for the record Tr. BKNYED00563 2019-07-22 page 16 line 1 to page 19 line 19.

**Discussion:**

119.Plaintiff-Appellant disputed the amount and delinquency of the mortgage, requested the payoff statement and tendered the undisputed amount. The full payoff was in full satisfaction of the dispute.

120.The Bankruptcy Court relies selectively on Plaintiff's exhibits of Defendant's conflicting and contradictory explanations of Plaintiff's Tender of Payoff Statement Payment, the implications of application of partial payment, any balance due being unsecured and the discharge of the debt by tender and release of collateral implications.

121.Nationstar claimed the payment was 5 days late and $309.78 short on account as result of the payment posting August 15, 2017.

122.Nationstar's letter (R. 41 Ex. B) to the DFS falsely explained that the payments had been received August 15, 2017, $309.78 short. (Ex. R) The returns receipts dated August 10, 2017

show representatives of both Gross Polowy LLC and Nationstar signed for the payments on August 10, 2017, making the payment complete, valid and not a short payoff.

123.12 CFR 226.10(a), Regulation Z sets down both the prompt crediting rule and the exception. "A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge?"

124.Under § 1026.36(c)(1)(i), a mortgage servicer must credit a payment to a consumer's loan account as of the date of receipt. This does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment as of the date of receipt. Accordingly, a servicer that receives a payment on or before its due date (or within any grace period), and does not enter the payment on its books or in its system until after the payment's due date (or expiration of any grace period), does not violate this rule as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty to the consumer, or in the reporting of negative information to a consumer reporting agency.

125.§ 1026.36(c)(1)(ii) controls the handling of partial payments. If a servicer receives a partial payment from a consumer, to the extent not prohibited by applicable law or the legal obligation between the parties, the servicer may take any of the following actions: Credit the partial payment upon receipt; Return the partial payment to the consumer; Hold the payment in a suspense or unapplied funds account.

126.Compliance with Part 419 Conduct of New York State Business Rules would require the servicer to apply partial payment.

127.The CFPB Interpretations refer to the "date of receipt" as the date that the "payment instrument or other means of payment reaches the mortgage servicer." An example is provided of a payment made by check, noting that payment is received when the servicer receives the check, not when the funds are collected. 9 Former Official Interpretations to Reg. Z, ¶ 36(c)(1)(i)-2; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 10 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-1; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 11 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-2; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 12 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-3; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 13 15 U.S.C. § 1639f(a). 14Id. 15 15 U.S.C. § 1639f(b). 16 Reg. Z, 12 C.F.R. §§ 1026.36(c)(1)(i), 1026.36(c)(1)(iii). 15 USC § 1639f, 15 USC § 1666c.

128.UCC 3-603(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

129.The two New York statutes at issue are New York State Real Property Actions and Proceedings Law ("RPAPL") § 1921 and New York Real Property Law ("RPL") § 275. RPAPL § 1921 and RPL § 275 both require a mortgagee to execute a satisfaction of mortgage and arrange to have the satisfaction recorded within 30 days. Failure of the mortgagee to do so entitles the borrower to a penalty based on when the satisfaction was recorded. The amounts are $500 for satisfaction not recorded within 30 days, $1,000 for satisfaction not recorded within 60 days, and $1,500 for satisfaction not recorded within 90 days.

130.Nationstar and SLS's misrepresentations the full payoff date violate Title 18 of the United States Code § 656 and 894.

131.A tender of less than the amount owing did not destroy the tender. In Matzger v. Page, 62 Wash. 170, 113 P.254 (1911)

132.Failure to tender three days' interest did not destroy the tender. Kentucky Virginia Stone Co. v. Fortner, 159 Va. 234, 165 S.E. 401 (1932).

133.It is possible that parties obligated on negotiable instruments are unaware that tender of payment exists as a mechanism to stop interest and costs from running on an instrument after its maturity date. Tender of payment in the negotiable instruments setting has been ignored in legal literature.' Section 3-604 has not been the subject of commentary since the enactment of the Code. J. WHITE & R. SUMMERS, HANDBOOK OFTHE LAW UNDER THE UNIFORM COMMERCIAL CODE §§ 13-18, at 443 (1972) makes only a passing reference to tender of payment under § 3-604. For a general discussion of the law of tender, see Comment, The Law of Tender in Texas, 29 BAYLOR L, REv. 325 (1971).

**G. Did the Court err in its conclusions that the "New Assertions" that Plaintiff raises in his Opposition and Supplemental Opposition to SLS's Motion for Summary Judgment do not amount to claims incorporated into the complaint through the Consolidated Motions against SLS in this adversary proceeding, and independently whether Plaintiff is entitled to amend claims in the Adversary Complaint to incorporate the "New Assertions"?**

**Preservation on Appeal:**

134.This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and the Adversary Complaint R. 1 ¶ 15c, 50-51.

**Discussion:**

135.The "New Allegations" as characterized by the Bankruptcy Court are incorporated claims for relief having been incorporated by Plaintiff-Appellant's Opposition to Motion for relief from lien. (R. 1 ¶ 15c, 52-56)(EDNY BK 18-01141-ess Dkt 31 ¶ 24)

**Conclusion**

136.The equitable resolution of the mortgage contract should not have gone past the first NYS AG complaint, because if HSBC's response was indicative of an acknowledgement of a lack of a right to foreclose, they couldn't then sell a right they didn't possess.

For the reasons stated above, the District Court should reverse the Bankruptcy Court's Decision and Order on SLS's Motion for Summary Judgement.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Monday, May 10, 2021

By: SEAN M MURRAY
SEAN M. MURRAY
P.O. BOX 1110
ALBANY, NEW YORK
12201-1110 U.S.A.
seanmurray@prodigy.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
——————————————————x

In re:

SEAN M. MURRAY

Case No. 17-44157

Chapter: 7

Debtor Pro Se
——————————————————x

**CERTIFICATION OF SERVICE**

The undersigned certifies that on Friday, May 21, 2021, a copy of the annexed papers: DEBTORS UNSWORN DECLARATION UNDER PENALTY OF PERJURY IN OPPOSITION TO FAY SERVICING, LLC'S MOTION TO COMPEL ABANDONMENT; were served and filed electronically, upon:

1. Richard J. McCord, Chapter 7 Trustee
   Certilman Balin Adler & Hyman
   90 Merrick Avenue
   East Meadow, NY 11554

2. Peter A. Lawrence, Esquire
   Stern & Eisenberg, PC
   485 B Route 1 South, Suite 330
   Woodbridge Corporate Center
   Iselin, NJ 08830

3. Miriam Rosenblatt, Attorney for Nationstar Mortgage LLC
   Robertson, Anschutz & Schneid, P.L., Bankruptcy Department
   6409 Congress Avenue, Suite 100
   Boca Raton, Florida 33487

4. Ehret Anne Van Horn, Esq., Attorney for Specialized Loan Servicing, LLC
   Gross Polowy, LLC
   1775 Wehrle Drive, Suite 100
   Williamsville, NY 14221

5. Robert W. Griswold, Esq., Attorneys for Fay Servicing, LLC
   as servicer for US Bank Trust National Association, Not In Its Individual Capacity
   But Solely As Owner Trustee For VRMTG Asset Trust
   LOGS Legal Group LLP f/k/a Shapiro, DiCaro & Barak, LLC
   175 Mile Crossing Boulevard Rochester, New York 14624

Dated: Monday, April 18, 2022

By: Sean M. Murray
SEAN M. MURRAY